UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MIZANUR RAHMAN (A208-889-712)

                         Plaintiff/Petitioner

    -against-

Susan DIBBINS, Acting Chief, Office of
Administrative Appeals, Merrick
GARLAND, Attorney General of the United
States Alejandro MAYORKAS, Secretary of
Department of Homeland Security; Ur M.
JADDOU, Director of U.S. Citizenship &
Immigration Services, Tracy RENAUD,
Associate Director, Service Center
Operations

                     Defendants/Respondents

**COMPLAINT**

Civil Action No.:

24-5607

---

Plaintiff, MIZANUR RAHMAN (A208-889-712) by and through counsel, alleges the following:

1.        This is an action for a mandamus declaratory relief to compel the adjudication of Plaintiff's Motion to Reopen and Reconsider pending with the Administrative Appeals Office and to grant Plaintiff the status of Special Immigrant Juvenile. As per agency policy and Plaintiffs' due

process, statutory and regulatory rights, the Administrative Appeals Office ("AAO") has unlawfully withheld Plaintiff's action over which the agency has sole jurisdiction.

## JURISDICTION

2.  This action arises under the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. §§1101 *et seq.*, the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

3.  This court has subject matter jurisdiction over this final agency action pursuant to 5 U.S.C. § 701, 28 U.S.C. §§1331, 1361, 2201; the Court may grant relief, and order Defendants to adjudicate the AAO motion and grant him Special Immigrant Juvenile Status pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 *et seq.,* the INA, and the APA.

4.  The Declaratory Judgment Act provides that the district court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); *see Anderson v. Bowen,* 881 F.2d 1, 5 (2d Cir. 1989); *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir. 1972); *see Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1133 (7th Cir. 2012) ("[t]he Declaratory Judgment Act by its own terms grants district

courts discretion in determining whether to entertain such an action") (citing 28 U.S.C. § 2201(a) (providing that the district court "may declare the rights and other legal relations of any interested party seeking such declaration")) (emphasis omitted).

5.  The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.  The APA also instructs a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and to "hold unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U. S. C. § 706(2)(A); *see FCC v. Fox Television Stations, Inc*., 129 S.Ct. 1800, 1812 (2009) (citing 5 U.S.C. § 706(2)(A)). "For these reasons, agencies under the APA are subject to a 'searching and careful' review by the courts." *Id* (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

6.  The Mandamus Act grants district courts with jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. For relief under the statute,

there must be "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson,* 881 F.2d at 5 (quoting *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972)).

## **PARTIES**

7. Plaintiff MIZANUR RAHMAN (A208-889-712)  ("Plaintiff," "Petitioner" or "MD") is a native and citizen of Bangladesh residing in the United States.  Petitioner filed an I-360 Petition for Special Immigrant Juvenile Status, denied by the National Benefits Center (USCIS'0 in March 2021. His Motion to Reopen and Reconsider has been pending at the Administrative Appeals Office since February 7, 2022.  Despite replies to all requests from the agency, there has been no final decision on appeal.

8. Defendant, Susan DIBBINS, is the acting Chief of the Office of Administrative Appeals ("AAO"), and as such, is charged with the supervision, oversight, and direction of the AAO.

9. Defendant Merrick GARLAND is the duly appointed, qualified, and confirmed Attorney General of the United States, and as such is the official charged with the enforcement of the laws of the United States and the official charged with the enforcement of the laws of the nation.

4

10. Defendant, Ur M. JADDOU, is the duly appointed, qualified, and confirmed Director of U.S. Citizenship and Immigration Services, and as such, is charged with the supervision, oversight, and direction of USCIS and its sub-agencies.

11. Defendant Alejandro MAYORKAS, is the duly appointed, qualified, and confirmed Secretary of the Department of Homeland Security ("DHS"), and as such, is charged with the supervision, oversight, and direction of the DHS and its sub-agencies, including the U.S. Citizenship and Immigration Services.

12. Defendant, Tracy RENAUD, is the duly appointed, qualified, and confirmed Associate Director, Service Center Operations of the United States Citizenship and Immigration Service, and as such, is charged with the supervision, oversight, and direction of the regional service centers with the jurisdiction over and responsibility of adjudicating immigration applications and petitions.

## **VENUE**

13. Venue is proper because a substantial part of the adjudication of Plaintiff's I-360 Petition occurred at the "Brooklyn" field office, which is located at 26 Federal Plaza, New York, NY 10278, which is within this

judicial district. *See* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in…a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated").

## **FACTS**

14.  Petitioner MIZANUR RAHMAN is a native and citizen of Bangladesh born on March 10, 1999. He left Bangladesh after his father put his safety at risk by forcing Petitioner to quit school and work for the Bangladesh National Party ("BNP"). Petitioner's father insisted that Petitioner continue supporting BNP activities despite that he was subjected to political violence, including one incident where he was attacked and injured by rival party members, leaving him with a permanent scar on his face, and another where he was kidnapped.

15. Petitioner fled Bangladesh through a smuggler who provided him a fake passport bearing the fictitious birthdate of August 4, 1992 and entered the United States without inspection on or about May 20, 2015.  He was detained by Customs and Border Protection and issued a Notice to Appear ("NTA") in removal proceedings on or about May 21, 2015.

16. Initially, Petitioner was placed in expedited removal, however, he filed for asylum and withholding of removal on or about August 21, 2015, claim political persecution in Bangladesh. An NTA was reissued on March 3, 2016, charging him as removable under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I).

17. On October 2, 2015, Petitioner was released into the custody of his future guardian, Mr. MD Shahadat Hossain, who commenced guardianship proceedings by filing a petition in the Family Court of the State of New York, Kings Family Court, on August 16, 2016.  An order to show cause on the guardianship petition was issued that same day, indicating guardianship proceedings would take place on September 26, 2016.

18. On December 8, 2016, the County of Kings Family Court, Hon. Javier E. Vargas, issued a "Special Immigrant Juvenile Status" ("SIJ") Order in Petitioner's "Proceeding for the Appointment of a Guardian," where the family court declared that Petitioner, 1) had not yet attained his twenty first birthday/y, 2) was unmarried, 3) was dependent on the Family Court," or "committed to or placed in the custody" of an appointed individual, 4) reunification with one or both of his parents is not viable due to neglect and abandonment, and 5) that it was not in his best interest to return to

Bangladesh.  The Court explained that Petitioner's reunification with his parent/s was found not viable due to neglect and abandonment under New York law as they encouraged him to become "an active member of the BNP party," and "refused to clothe" and "feed him" if he did not support the party, while they "beat him and called him a traitor because he wanted to study and attend school as opposed to fighting for the BNP party."

19. On May 24, 2017, Petitioner filed for classification as a Special Immigrant Juvenile by submitting an I-360 Petition for Special Immigrant to USCIS.  A copy of the family court order was included with the petition.

20. On June 10, 2020, USCIS issued a "Notice of Intent to Deny" the I-360 Petition, providing Petitioner to submit additional evidence to overcome the intended grounds for denial, including, 1) additional evidence to establish his date of birth, 2) evidence the court provided some form of placement, supervision, or services, in connection with the finding of dependency; and, 3) evidence to establish a reasonable factual basis for the court's determination that it was not in his best interest to return to Bangladesh.  Petitioner submitted several documents in a timely response dated July 13, 2020, including documentation of his birth and identification, a copy of the SIJ order and supporting witness affidavits.

8

21. On September 2, 2020, USCIS issued a decision denying the I-360. The decision indicated Petitioner submitted sufficient evidence to establish his age but did not submit evidence the Family Court "provided some form of placement, supervision, or services in connection with the finding of dependency." According to USCIS, the SIJ order found Petitioner dependent on the court, "but does not indicate whether the court provided some form of relief to protect you from parental abuse, abandonment, neglect, or a similar basis under state law," which "could be in the form of a custodial placement, supervision, or services in connection with the finding of dependency."

22. Thus, according to USCIS because Petitioner had not met his burden of "showing that the court provided some form of placement, supervision, services or other relief in connection with the finding of dependency," the consent of USCIS was not warranted.

23. The decision further indicated that consent was unwarranted because the order contained "no reasonable factual basis for the best interest rulings," allegedly leaving USCIS "unable to determine whether your primary purpose in seeking the juvenile court order was to obtain relief from parental maltreatment or to obtain an order for immigration purposes."

24.Petitioner timely appealed the ruling of USCIS to the Administrative

Appeals Office (AAO) on September 30, 2020, making several arguments.

The appeal first argued the finding that the SIJ order failed to "indicate that

the Family Court had provided any form of relief in connection with its

Special Findings Order" was a "clearly erroneous" determination since "that

is not one of the statutory requirements under the law."  Petitioner thus

argued that by requiring the Special Findings Order to "contain specific

elements not enumerated in the statute," USCIS impermissibly went

"beyond the Agency's purview" in determining whether to consent to SIJ

status.  Petitioner argued this type of "overreaching was an abuse of

discretion by USCIS."

25.The appeal further asserted that even if USCIS were allowed to

consider this factor, the decision was an abuse of discretion because "the

record fully demonstrates that Petitioner's sponsor, MD Shahadat Hossain

was appointed as his Guardian," even if he is not specifically mentioned in

the SIJ order. To support this argument, Petitioner included several

documents with the appeal, such as the Order to Show Cause issued on

August 16, 2016 setting a hearing for the guardianship appointment of MD

Shahada Hossain on September 26, 2016, Petitioner's affidavit in support of

special findings provided to the family court on September 27, 2016,

confirming that MD Shahada Hossain had been appointed as his guardian,

the family court issued order directing that MD Shahadat Hossain be

fingerprinted for the purposes of the guardianship petition, and an

Enrollment Referral Form that lists Md Shahadat Hossain as Petitioner's

appointed Guardian

26. Nevertheless, on January 3, 2022, the AAO denied the appeal and

upheld the decision of USCIS denying the I-360 (MSC 21 900 65542).  The

AAO accepted the Petitioner's affidavit at face value in finding contrary to

USCIS that the "record contains a reasonable factual basis for the Family

Court's best interest determination."

27. However, the AAO still upheld the denial on the basis that "Petitioner

has not demonstrated he was granted relief from parental maltreatment by

the Family Court." The AAO acknowledged  "the Family Court's SIJ order

indicated that it was issued in a guardianship appointment proceeding and

the Petitioner requested the appointment of a guardianship before the Family

Court, noting that "Petitioner's underlying affidavit to the Family Court

expresses his desire for [MD Shahadat Hossain] to become his guardian,"

while also recognizing that a fingerprint order was issued for MD Shahadat

Hossain in the guardianship proceeding and that Petitioner submitted a

Department of Education enrollment referral form listing MD Shahadat

Hossain as the Petitioner's guardian.

28. However, according to the AAO, this evidence reflected only

Petitioner's request for a guardianship appointment but does not demonstrate

such request was granted by the Family Court."  Because the AAO found

that Petitioner failed to meet his burden to show that "he sought *and* was

granted protective or remedial relief apart from an order containing SIJ

findings," the denial was affirmed.

29. The AAO did not "question the Family Court's determination that the

Petitioner suffered parental maltreatment and that he could not reunify with

his parents for that reason" but concluded "the evidence does not show that

the Petitioner was granted any form of relief from the court to protect him

from such parental maltreatment, apart from the factual findings required to

file a petition for SIJ classification."

30. Accordingly, the AAO found "USCIS' consent to a grant of SIJ

classification is not warranted" because a "preponderance of the evidence

therefore does not establish that the Petitioner sought the Family Court

decree in this case primarily to obtain relief from parental abuse, neglect,

abandonment, or a similar basis under state law, rather than to obtain an immigration benefit."

31. The Petitioner filed a timely I-290B Motion to Reopen and Reconsider with the AAO, which was received on February 7, 2022, arguing the matter compels reconsideration where in denying the I-360 for the failure to meet a non-existent legal requirement for establishing SIJ eligibility and failing to consider the record evidence from the family court on the merits of the guardianship appointment, the AAO on its face abused its discretion, acting in clear violation of its statutory authority and contrary to established policy.

32. Despite several attempts to inquire into the status of the case and numerous requests for the matter to be adjudicated within a reasonable period, the I-290B motion remains pending for over two and a half years, approaching 900 days. There has been no response from the AAO nor any indication of when, if ever, the I-290B will be adjudicated, despite that Petitioner, as a matter of law, is entitled to relief under binding agency policy, which at minimum requires his case be reconsidered under the proper legal standards.

## LEGAL STANDARDS

33.By statute: A special immigrant juvenile is: "(J) an immigrant who is present in the United States— (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status…" INA § 101(a)(27)(J)(i), 8 U.S.C. § 1101(a)(27)(J)(i).

34.To qualify for special immigrant juvenile status under 8 U.S.C. § 1101(a)(27)(J)(i), a juvenile court, defined as any court with jurisdiction over the custody and care of juveniles, must make certain findings under the statute. Specifically, for an order of a "juvenile court" to be valid for SIJ purposes, a juvenile petitioner must be declared dependent on the court, or

legally placed under the custody of either a state agency or a person or entity

appointed by a state or juvenile court,  the juvenile court must declare under

state law "that reunification of the juvenile with one or both of the juvenile's

parents is not viable due to parental abuse, neglect, abandonment, or a

similar basis" under state law, and determine that it would not be in the

petitioner's best interest to be returned to the home country. *Matter of Maria

P.E.A.,* 111 A.D.3d 619, 975 N.Y.S.2d 85 (2d Dept. 2013) (citing INA

§101(a)(27)(J)); *Matter of Mohamed B*., 83 AD.3d 829, 831 (2d Dept.

2011); *Matter of Trudy–Ann W. v. Joan W.,* 73 AD.3d 793, 795 (2d Dept.

2010)); *see also,* Trafficking Victims Protection Reauthorization Act of

2008: Special Immigrant Juvenile Status, Memorandum of Donald Neufeld,

HQOPS 70/8.5 (March 24, 2009) ("SIJ Memo").

35. Once an applicant has obtained a predicate order from a juvenile

court, they can apply for SIJS with U.S. Citizenship and Immigration

Services ("USCIS") on Form I-360, who must consent to the grant of SIJ

classification, 8 U.S.C. § 1101(a)(27)(J)(i).  For the purposes of consent,

USCIS review of the juvenile court order and record of family proceedings

is limited to the determination of whether the request for SIJ classification is

*bona fide,* "which requires the petitioner to establish that a primary reason

the required juvenile court determinations were sought was to obtain relief from parental abuse, neglect, abandonment, or a similar basis under state law." *See* USCIS Policy Manual ("USCIS PM"), Section 6, Chapter J, Part 2(A) (6 USCIS-PM J.2(A) (citing 8 U.S.C. § 1101(a)(27)(iii); 8 CFR 204.11(b)(5); 8 CFR 204.11(d)(5); H.R. Rep. 105-405, p. 130 (1997)).

36. Under agency policy, "USCIS relies on the expertise of the juvenile court in making child welfare decisions and does not reweigh the evidence to determine if the child was subjected to abuse, neglect, abandonment, or a similar basis under state law" and "does not use its consent authority to reweigh the evidence that the juvenile court considered when it issued the predicate order." *Id* (citing *Saravia v. Barr*, 3:17-cv-03615 (N.D. Cal. January 14, 2021)); *see Flores Zabaleta v. Nielsen*, 367 F. Supp. 3d 208, 212 (SDNY 2019) The purpose of the consent requirement… was 'not for making determinations of dependency status,' which remained an area of state court expertise"); *FM v. Nielsen*, 365 F. Supp. 3d 350, 380 & n.16 (SDNY 2019) ("the agency relies on the state court's expertise in these matters, and the agency is not to reweigh the evidence on which the state court relied in issuing a Special Findings Order…, the Family Court is an expert in making reunification findings.")

16

37. Thus, "USCIS recognizes that there may be some immigration motive for seeking the juvenile court order" but may "withhold consent if evidence materially conflicts with the eligibility requirements." 6 USCIS-PM J.2(A); see RFM, 365 F. Supp. 3d at 380 ("generally consents to the grant of SIJ classification when the order includes or is supplemented by a reasonable factual basis for all of the required factual findings")

38. If a petitioner is granted SIJ status, he or she is eligible to apply for lawful permanent residence (LPR) in the United States once a visa becomes available to them.  INA § 101(a)(27); see INA § 245(h). Although adjustment of status generally requires that a person have been inspected and admitted or paroled into the United States, INA § 245(a), those with SIJ status are deemed to have been paroled into the United States for the purposes of adjustment of status and can apply to adjust status in the United States even if they entered without inspection and were not initially admitted. See INA § 245(h)(1), 8 U.S.C. §1255(h)(1); 8 C.F.R. § 245.1(e)(3)(i); see also, 7 USCIS-PM F.7(C)(3) (noting the bars to adjustment of status at INA § 245(c), 8 U.S.C. §1255(c) do not apply to SIJ-based adjustment of status).

39. Visas for Special Immigrant Juveniles are issued from the fourth preference category of employment-based visas, or "EB-4." INA § 203(b)(4), 8 U.S.C. § 1153(b)(4). Thise who have an available visa can apply for SIJ status and adjustment of status concurrently through the simultaneous filing of an I-360 petition and I-485 Application to Adjust Status with USCIS. *See* 7 USCIS-PM F.7(C)(2).

40. "A motion to reopen must state the new facts to be provided in the reopened proceeding and be supported by affidavits or other documentary evidence." 8 CFR §103.5(a)(2).

41. "A motion to reconsider must state the reasons for reconsideration and be supported by any pertinent precedent decisions to establish that the decision was based on an incorrect application of law or Service policy. A motion to reconsider a decision on an application or petition must, when filed, also establish that the decision was incorrect based on the evidence of record at the time of the initial decision." 8 CFR §103.5(a)(3); *See Jin Ming Liu v. Gonzales,* 439 F.3d 109, 111 (2d Cir. 2006) (A motion for reconsideration "is a request that the [Agency] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked") (citing *In re Cerna*, 20 I. & N.

Dec. 399, 403 n. 2 (BIA 1991) (internal quotation marks omitted)); *see*

*Matter of O-S-G-* 24 I&N Dec. 56 (BIA 2006) (a "motion to reconsider a

decision of the Board of Immigration Appeals must include …an allegation

of material factual or legal errors in the prior decision that is supported by

pertinent authority"); *see also, Ke Zhen Zhao v. U.S. Dep't of Just*., 265 F.3d

83, 90 (2d Cir. 2001) (same).

## COUNT ONE

### VIOLATION OF THE GOVERNING STATUTES, REGULATIONS AND POLICIES

42. The allegations set forth in paragraphs 1 through 41 above are

repeated and re-alleged as though fully set forth herein.

43. The AAO has exclusive jurisdiction over MD's Motion to Reopen or

Reconsider the USCIS denial of his I-360 Petition for Special Immigrant

Juvenile. 8 C.F.R. § 103.5(a)(1)(ii).; *see also,* AAO Practice Manual

("AAOPM"), Chapter 1.4(a) ("1 AAOPM 4(a)") (and "unfavorable decision

for an application or petition that falls under the AAO's jurisdiction"

includes those for "special immigrant visa petitions"); 4 AAOPM 2 ("the

AAO has jurisdiction over motions relating to its decisions").

44.By regulation, "[a] motion that does not meet applicable requirements *shall* be dismissed. Where a motion to reopen is granted, the proceeding *shall* be reopened." 8 C.F.R. § 103.5(a)(4) (emphasis added). The requirement that the AAO "shall" either dismiss the motion or "shall" reopen proceeding is a mandatory regulatory requirement. *See Hewitt v. Helms*, 459 US 460, 472 (1983) (describing "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed…");  *Bruesewitz v. Wyeth LLC*, 131 S.Ct. 1068, 1088 (2011) (a statute is mandatory when using "declarative language (e.g., 'shall'), rather than a conditional term"); *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) ("[t]he word 'shall' is ordinarily 'the language of command'") (quoting *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935)); *see also, Christensen v. Harris County*, 529 US 576, 588 (2000) (where the "text of the regulation itself indicates that its command is permissive, not mandatory" an agency's contrary interpretation cannot "overcome the regulation's obvious meaning"); *Kisor v. Wilkie,* 139 S. Ct. 2400, 2407 (2019) ("an agency bringing an enforcement action must always rely on a rule that went through notice and comment").

45. Notably, there is no basis- and the agency has provided none- for withholding the adjudication of a properly filed motion to reopen or reconsider. 8 C.F.R. § 103.5; *see* 4 AAOPM 1-5. Because there is no indication that Petitioner improperly filed his I-290B or that his motion to reopen and reconsider fails meet any procedural requirements, the AAO has a non-discretionary regulatory duty to adjudicate motion.  8 C.F.R. §§ 103.3(a)(2)(x), (3)(iii); *see National Ass'n v. Defenders of Wildlife*, 127 S. Ct. 2518, 2531-32 (2007) (the agency did "not have the discretion" to ignore a mandatory command which "admits of no discretion on the part of the person instructed to carry out the directive") (quoting *Association of Civilian Technicians v. FLRA*, 22 F.3d 1150, 1153 (C.A.D.C. 1994)); *Lopez v. Davis*, 531 U.S. 230, 241 (2001) (the "'use of a mandatory" language will "'impose discretionless obligations'"); *Sharkey v. Quarantillo*, 541 F. 3d 75, 89 & n.13 (2d Cir. 2008) (finding agency had "a non-discretionary duty to provide LPRs with proof of their status" where required by law).

46. Accordingly, given the near 900 day delay, this Court should compel the AAO to comply with the agency's mandatory duty per regulation.  Under the APA, a final "'agency action' is defined in § 551(13) to include…failure to act." *Norton v. Southern Utah Wilderness Alliance*, 542 US 55, 62 (2004)

(emphasis original.) "The APA provides relief for a failure to act in §
706(1): '[t]he reviewing court shall . . . compel agency action unlawfully
withheld or unreasonably delayed.'" *Id; see Sharkey*, 541 F. 3d at 89 & n.13
(2d Cir. 2008) (a "706(1) claim… challenges the agency's failure to act")
(emphasis original).  The "Supreme Court has explained that when a
plaintiff challenges an agency's failure to act, the challenge is reviewable
under the APA … 'where a plaintiff asserts that an agency failed to take a
discrete agency action that it is *required* to take.'" *Id* (quoting *Norton*, 542
U.S. at 63- 65) (emphasis added)).

47. As such, if the agency is "legally required" to take a "discrete" action
on an application, the "failure to act" even "without formally rejecting a
request" is an "agency action that can be compelled under the APA." *Id.* at
63-64 (§ 706(1) "empowers a court…to compel an agency 'to perform a
ministerial or non-discretionary act,' or 'to take action upon a matter,
without directing how it shall act") (emphasis and quotations omitted)).

48. Here, the regulatory language is unambiguously mandatory,
indicating that the disposition of the motion "shall" take place, either by
dismissing the motion or granting it and reopening proceedings.  8 C.F.R. §
103.5(a)(4). One of the actions in adjudicating a motion is thus a

"required…discrete agency action" under "agency regulations that have the force of law." *Norton*, 542 U.S. at 65; *see Sharkey*, 541 F. 3d at 87, 89 n.13 (compelling regulatory duty to provide proof of status, since the "failure to act [Plaintiff] challenges is a discrete one that the agency is required to take…[and the] complaint falls within the strictures of Norton …") (citing *Etuk v. Slattery*, 936 F.2d 1433, 1448 (2d Cir. 1991));  *Mantena v. Johnson*, 809 F. 3d 721 (2d Cir. 2015) ("it is an abecedarian principle of administrative law that agencies must comply with their own regulations") (internal quotations and marks omitted); *see also, Villa v. US DHS*, 607 F. Supp. 2d 359, 363 (N.D.N.Y. 2009) ( "[w]hile it is within the Attorney General's discretion to grant or deny an application for adjustment of status, it is not within his discretion to not adjudicate at all") (citing *Kim v. Ashcroft*, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (SDNY 2008); *Ruiz v. Mukasey*, 552 F.3d 269, 273 (2d Cir. 2009)); *Alkeylani v. Department of Homeland Sec.,* 514 F. Supp. 2d 258, 265 (D. Conn. 2007) ("'the, wide latitude given the Executive to grant or deny an [adjustment] application . . . does not include the authority to refuse to adjudicate [an] application") (citations and quotations omitted).

49. The APA therefore requires the AAO to issue such a decision "within a reasonable time," 5 U.S.C. § 555(b) ("within a reasonable time, each agency shall proceed to conclude a matter presented to it"), which this Court may compel the AAO to do if the required decision is "unreasonably delayed." *Id*. at §706(1) (courts will compel "agency action unlawfully withheld or unreasonably delayed"); *see Emhart Industries*., 907 F. 2d at 379 ("federal agencies, ha[ve] a statutory duty to conclude… proceedings 'within a reasonable time', 5 U.S.C. § 555(b)"); *Kilani-Hewitt v. Bukszpan,* 130 F. Supp. 3d 858, 864-65 (S.D.N.Y.  2015) ("Relying on the APA, the 'overwhelming majority' of these courts have found that whether to consider such an application and when to consider it are not discretionary decisions and thus must be made within a reasonable time") (citing DNY cases) (quotation omitted); *Villa,* 607 F. Supp. 2d at 364 ("§ 555(b) places a non-discretionary duty on the government to adjudicate these applications within a reasonable time"); *Alkeylani,* 514 F. Supp. 2d at 265 (the APA "requires CIS to take action on applications presented to it `within a reasonable time'") (quoting 5 U.S.C. § 555(b)).

50. Because, despite the efforts of Petitioner and counsel to discern the reasons for the delay, there is still no indication as to when, if ever, a

24

decision will be issued by the AAO, withholding a decision on motion for almost 900 days under these circumstances is unreasonable under any context. *See Alkeylani,* 514 F. Supp. 2d at 266 ("finding three year delay unreasonable based on "processing times for various applications posted by USCIS on its website" showing agency "is currently adjudicating I-485 applications that were received more than twenty months after USCIS received their I-485s") (quoting *Reddy v. Commodity Futures Trading Comm'n,* 191 F.3d 109, 120 (2d Cir.1999)); *see American Academy of Religion*, 463 F. Supp. 2d at 421 (finding where "Ramadan has waited more than nine months for a decision on his application for a nonimmigrant visa" but the "Department of State's own website indicates that…most special clearances are resolved within 30 days of application" these "representations suggest that Ramadan's nine-month wait is well beyond what is 'reasonable.'")

51.Notably, there is "no evidence that the delay is attributable to the actions of" the Plaintiff "nor any evidence indicating that the facts underlying [his motion] are especially complex, which might justify a delay." *Singh v. Still*, 470 F.Supp.2d 1064 (ND Cal. 2006) (outlining reasons for finding delay attributable to agency). Rather, on its face "Respondents,

and not [Petitioner] are the source of the delay" in this matter. *Id; see Alkeylani,* 514 F. Supp. 2d at 266 (holding that despite "legitimate policy crisis" burdening agency resources," it is clear that the three years during which Plaintiffs' applications have been pending qualifies as an unreasonable delay, especially where Defendants have made no showing that Plaintiffs' applications have suggested a security risk or posed any other problem that would excuse such a delay")

52. Yet despite that the AAO "has more than adequate information at hand to decide this matter" and the "nondiscretionary obligation to render," a decision, the agency has not issued a decision or given a reason for the delay. *American Academy of Religion,* 463 F. Supp. 2d at 422. "[S]imply because [SIJ] is a form of discretionary relief does not mean that there is no limit to the length of time the [the AAO] may take processing applications; '[t]he duty to act is no duty at all if the deadline is eternity.'" *Id* (quotation omitted); *see Villa,* 607 F. Supp. 2d at 365-66 ("Agencies must be responsive to the people who apply to them for assistance and cannot unreasonably delay their action," holding these plaintiffs and "countless others in their situation, cannot be left in limbo" by USCIS); *Kilani-Hewitt v. Bukszpan*, 130 F. Supp. 3d at 866 ("a duty to decide that is unconstrained

by a reasonableness requirement makes little sense. The `duty to decide'
becomes no duty at all if it is accompanied by unchecked power to decide
when to decide'") (quotation omitted).

53.Thus, the AAO cannot simply withhold a motion indefinitely: even if
there were "'no statutory…deadline by which the [AAO] must adjudicate
[the motion], at some point, defendants' failure to take any action runs afoul
of [APA §] 555(b). Were it otherwise, the [the AAO] could hold [motions]
in abeyance for decades without providing any reasoned basis for doing
so.'" *Id* (holding that even if there were "'no statutory…deadline by which
the CIS must adjudicate [the] application, at some point, defendants' failure
to take any action runs afoul of [APA §] 555(b)") (quoting *Kim v. Ashcroft,*
340 F.Supp.2d at 393); *see Alkeylani,* 514 F. Supp. 2d at 265.

54.Rather, since regulations describe a discrete action the agency "shall"
take, the AAO's "obligation to adjudicate [the motion] is clearly prescribed"
and "the failure to do so within a 'reasonable' period of time constitutes 'an
agency['s] fail[ure] to take a discrete action that it is required to take.'" *Id.* at
266 (compelling adjudication where "increased burdens on the FBI to
conduct name check requests" and "high volume of applications" caused
delay); *Villa*, 607 F. Supp. at 364-65 (holding that even if "Defendants have

27

significant responsibilities and a crushing work load…Agencies must be
responsive to the people who apply to them for assistance and cannot
unreasonably delay their action… The Plaintiffs in this action, and the
countless others in their situation, cannot be left in limbo" and the "courts
must be able to direct the Defendants to take action on these applications
when appropriate"); *Cao v. Upchurch*, 496 F.Supp.2d 569, 573 (E.D.Pa.
2007) (finding that while adjustment statute says "nothing about the pace of
such a decision," it "certainly does not confer on the Attorney General
discretion to let such a petition languish indefinitely"); *Kilani-Hewitt*, 130 F.
Supp. 3d at 868 (The `duty to decide' becomes no duty at all if it is
accompanied by unchecked power to decide when to decide'") (quotations
omitted) .

55. There is simply no section of law or even AAO policy has "given the
discretion to decide the pace at which they will adjudicate [motions]. Nor are
they given the discretion to not take any action." *Id*. As courts have
explained, to allow bureaucratic problems to determine the pace upon which
agency will make legally required decisions could permit the agency to grind
the processing of appeals like Plaintiff's to a halt, "leaving them to languish
there indefinitely," under the guise of reasonableness. *Id*. at 365 (citing *Kim,*

340 F.Supp.2d at 393). Such a policy "would render toothless all timing restraints, including those imposed by the APA and ... would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters." *Id*; *see Cordoba*, 78 F. Supp. 2d at 245 (finding although "government's statistics" about processing delays "seem impressive, they do not necessarily carry the day" to warrant a dismissal of a complaint under the APA).

56.In sum, the AAO does not have discretion to "ignore its own regulations" by withholding a decision on motion that it "shall" take, without providing any reason for doing so: "it is an abecedarian principle of administrative law that agencies must comply with their own regulations." *Mantena v. Johnson*, 809 F.3d 721, 729 (2d Cir. 2015) ("USCIS" must follow its "own regulations" and the "correct procedure," it is binding law "in the context of … a visa petition" that "compliance with regulations establishing procedural requirements is… not within the AAO's discretion." *Id* (holding that "if USCIS failed to follow the correct procedure…that failure was not within USCIS's discretion") (internal quotations and marks omitted); *see Johnson v. Ashcroft,* 378 F. 3d 164  169 (2d Cir. 2004) ("[t]he BIA is required to follow the law, including INS regulations"); *Montilla v.*

*I.N.S.,* 926 F.2d 162, 166-67 (2d Cir. 1991) (the agency "shall resolve the questions before it ... consistent with the [INA] and [agency] regulations")). Rather, Petitioner is "legally entitled to insist upon the observance of rules promulgated... pursuant to law." *Padmore v. Holder*, 609 F. 3d 62, 68 (2d Cir. 2010) (quoting *Bridges v. Wixon*, 326 U.S. 135, 153 (1945) (internal quotation marks omitted); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).

57. Accordingly, since Plaintiff "has sufficiently alleged that [the AAO] had a nondiscretionary duty to adjudicate his [motion]… within a reasonable amount of time" and "has alleged a breach of that duty by pointing to a delay that is long enough," Petitioner MD "has stated a clear claim for relief.*" Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540 (S.D.N.Y. 2008) (noting where court found "delay unreasonable as a matter of law" in "denying defendant's Rule 12 motion, and holding '[o]n the instant record, which lacks a particular explanation as to the cause of the delay… that a delay of more than two years is unreasonable under the APA"); *Cordoba v. McElroy*, 78 F.Supp.2d 240 (S.D.N.Y. 2000) (Kaplan, J.) (refusing to dismiss for lack of jurisdiction, relying on 28 U.S.C. § 1331 and 5 U.S.C. § 555 in case of two and a half year delay); *see Singh v. Still,* 470 F.Supp.2d 1064, 1068 (ND

Cal. 2006) (citing cases where "courts have afforded relief" where "applications had 'languished for two years and yet the INS has done nothing") (citing *Yu v. Brown*, 36 F. Supp. 2d 922, 935 (D.N.M. 1999) (denying defendants' motion for judgment on the pleadings where application had been pending for two and a half years); *Paunescu v. INS*, 76 F.Supp.2d 896, 902-03 (N.D.Ill. 1999) (finding delay of two years attributable to government unreasonable where plaintiffs were "the victims of a bureaucratic nightmare"); *Galvez v. Howerton,* 503 F.Supp. 35, 39-40 (C.D.Cal. 1980) (finding a six-month delay by defendants in processing unreasonable where due to government misconduct)); *see also, Ceken*, 536 F.Supp.2d at 218 (citing Court's holding that a "two-year delay in the processing of their status applications was unreasonable" and "that it possessed subject matter jurisdiction pursuant to the APA and the federal question statute" where government's "explanation, standing alone, does not support the outright dismissal of this action").

58. The AAO's failure to adjudicate Petitioner's motion to reopen and reconsider the dismissal of his appeal of the USCIS denial of the I-360 Petition for Special Immigrant Juvenile application in almost 900 days is consequently unreasonable, contrary to the regulatory and policy procedures

31

and requirements. This court should therefore compel the agency to issue a decision forthwith, or in the alternative adjudicate the motion within a reasonable, but finite, period of time.

## COUNT TWO

## STATUTORY ELIGIBILITY AS A MATTER OF LAW

59. The allegations set forth in paragraphs 1 through 58 above are repeated and re-alleged as though fully set forth herein.

60. Petitioner's motion, like the appeal before it, is sufficient to show eligibility for SIJ status as a matter of fact and law.  This Court should therefore declare Petitioner eligible for SIJ status and compel the AAO to reconsider and/or reopen SIJ proceedings.

61. The AAO, like the USCIS in the underlying decision, violated its statutory requirement by imposing additional requirements to establish SIJ eligibility that do not appear in the statutory, regulatory or even policy based language. The statute does not necessarily require a juvenile court to issue an order of guardianship but makes SIJ status available to juveniles who have been "declared dependent on a juvenile court located in the United States *or* whom such a court has legally committed to, or placed under the custody of,

an agency or department of a State, or an individual or entity appointed by a State or juvenile court...." 8 U.S.C. § 1101(a)(27)(J)(i) (emphasis added).

62. The regulations further highlight this requirement, stating the "juvenile court must have made *at least one* of the following judicial determinations related to the petitioner's custodial placement or dependency in accordance with State law governing such determinations: (A) *Declared the petitioner dependent upon the juvenile court; or* (B) Legally committed to or placed the petitioner under the custody of an agency or department of a State, or an individual or entity appointed by a State or juvenile court." 8 C.F.R. § 204.11(c)(1)(i) (emphasis added).

63. Even under agency policy guidelines, the required statutory findings for SIJ are well-understood to mean the "petitioner must be the subject of a juvenile court order that declares the petitioner dependent on a juvenile court, *or* legally commits to or places the petitioner under the custody of either an agency or department of a state, or a person or entity appointed by a state or juvenile court." 6 USCIS PM (J)(2) ("A determination of dependency requires that the petitioner be declared dependent upon a juvenile court located in the United States in accordance with state law

governing such declarations of dependency. The petitioner must be in the United States and under the jurisdiction of the court") (emphasis added).

64. Accordingly, unambiguous language of the statute, as interpreted and applied by the agency, clearly allows SIJ for a juvenile either "declared dependent on a juvenile court located in the United States *or*…placed under the custody of…an individual" in a guardianship proceeding so long as the other criteria is satisfied. 8 U.S.C. § 1101(a)(27)(J)(i) (emphasis added). The juvenile court order in Petitioner's "Proceeding for the Appointment of a Guardian" expressly made the finding that he "was dependent on the Family Court," yet according to the AAO, he was not SIJ eligible because "this evidence reflected only Petitioner's request for a guardianship appointment but does not demonstrate such request was granted by the Family Court," denying the appeal because "Petitioner has not demonstrated he was granted relief from parental maltreatment by the Family Court" where he was required to show that "he sought and was granted protective or remedial relief apart from an order containing SIJ findings."

65. The AAO's requirement, which reflects that of USCIS before it, is indisputably contrary to the SIJ requirements as provided by statute. There is no requirement, nor can one be inferred, that a juvenile declared dependent

34

on the family court must also be "granted protective or remedial relief apart" from the special findings provided by statute: the language of the statute unambiguously requires only that the juvenile court make an express finding that Petitioner is either declared dependent on the court "or" appointed a guardian. 8 U.S.C. § 1101(a)(27)(J)(i).  The AAO's "strained construction would … ignore the disjunctive 'or' and rob the term …. of its independent and ordinary significance." *Reiter v. Sonotone Corp*., 442 US 330, 338-39 (1979) ("in construing a statute we are obliged to give effect, if possible, to every word Congress used") (citing *United States v. Menasche*, 348 U. S. 528, 538-539 (1955)).

   66. "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise; here it does not." Id. at 339 (citing FCC v. Pacifica Foundation, 438 U. S. 726, 739-740 (1978)).  Rather, "Congress' use of the word "or" makes plain" that a juvenile like Petitioner need not be declared dependent by the court and be appointed a guardian. *Id*; see *Smith v. United States*, 508 US 223, 229 (1993) Had Congress intended the narrow construction petitioner urges, it could have so indicated. It did not, and we decline to introduce that additional requirement on our own"); *Commissioner v.*

*Schleier*, 515 US 323, 336-37 (1995) ("the plain language of § 104(a)(2), the text of the applicable regulation, and our decision in Burke establish two independent requirements"). *Budhathoki v. Nielsen*, 898 F.3d 504, 515 (5th Cir. 2018) (state court issued a child support order rather than a dependency order).

67. Had Congress intended for custody to be granted in addition to a dependency finding, making SIJ status contingent on the finding that a juvenile is declared dependent on the court "and" appointed to a guardian or other form of custody, "it presumably would have said so; other statutes, in other contexts, speak in just that way." *Descamps v. US*, 133 S. Ct. 2276, 2287 (2013); *see Thomas v. Arn*, 474 US 140, 149 (1985) "[o]ne would think that if Congress had wished such a drastic consequence to follow from the missing of the ten-day time limit, it would have said so explicitly'") (quoting *Lorin Corp. v. Goto & Co.*, 700 F. 2d 1202, 1206 (1983)); *see Koon v. United States*, 518 US 81, 108-09 (1996) ("[h]ad Congress intended the courts to supervise the Commission's treatment of departure factors, we expect it would have said so in a clear way. It did not, and we will not assume this role.").

36

68. On its face, the SIJ order makes the necessary findings and would have rendered Petitioner eligible but for the non-existent extra-legal requirement unilaterally imposed by USCIS and then the AAO on appeal. Under all known cannons of statutory construction, the AAO's "interpretation is inconsistent with the statute's language and purpose," contrary to regulation, and in violation of the agency's own policy guidance. *Rosario v. INS*, 962 F.2d 220, 223-245 (2d Cir. 1992) ("insofar as the agency's interpretation of § 212(c) results in adding to the domicile requirement a residency requirement, which is not included in the language of the Act, we are unable to uphold it. Our conclusion that the INS' interpretation is unreasonable is supported by the principle that in light of the harshness of deportation, ambiguous deportation provisions should be construed in favor of the alien") (citing *Costello v. INS*, 376 U.S. 120, 128 (1964); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837, 843 n. 9 (1984)); *see also, Vincent v. Apfel*, 191 F.3d 1143, 1148 (9th Cir. 1999) ("There is no justification for adding limiting language to a clear and unambiguous statute and regulation.").

69. The AAO's alternative ground is similarly erroneous as a matter of law since Petitioner clearly met the burden to show a guardian was nevertheless appointed in his case.  According to the AAO, although Petitioner submitted evidence which all but confirms as a matter of logic and common sense that MD Shahadat Hossain was appointed guardian, without providing a copy of an actual separate order issued "apart" from the SIJ order which formally appoints such guardian, Petitioner cannot show he was provided the protective or remedial relief he sought.

70. However, consideration was not limited to the court order.  Agency guidance clearly explains that In order to consent to the grant of SIJ classification, USCIS must review the juvenile court order(s) *and any supporting evidence submitted* to conclude that the request for SIJ classification is bona fide."6 USCIS PM (J)(2). In particular, the manual states explicitly that "*USCIS does not require specific documents* to establish the factual basis or the entire record considered by the court" provides "Examples of documents that a petitioner may submit to USCIS that may support the factual basis for the court order," which include: "*Any supporting documents s*ubmitted to the juvenile court, if available; The petition for dependency or complaint for custody or other documents which

38

initiated the juvenile court proceedings; Court transcripts; Affidavits summarizing the evidence presented to the court and records from the judicial proceedings; and Affidavits or records that are consistent with the determinations made by the court." 6 USCIS PM (J)(3) (emphasis added).

71. Thus, the AAO decision on its face ignores the agency's own procedures and imposes a greater burden on Petitioner to provide direct evidence of guardianship despite the obvious conclusion which can be drawn from the strong circumstantial evidence that the guardian was appointed. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Before the BIA may extinguish the entitlement of these otherwise eligible beneficiaries, it must comply, at a minimum, with its own internal procedures"); *Singh v. US Dept. of Justice*, 461 F. 3d 290, 296 (2d Cir. 2006) ("[t]he failure of the [BIA] and of the Department of Justice to follow their own established procedures [constituted] reversible error'… even without proof of prejudice to the objecting party") (quoting *Montilla v. INS*, 926 F.2d 162 (2d Cir. 1991)).

72. Not only is the AAO's treatment of the evidence and heightened evidentiary requirements contrary to law and policy, the finding is pure nonsense: any reasonable factfinder would be compelled to conclude based

on the documents provided by Petitioner on appeal that MD Shahadat

Hossain was appointed a guardian.  The proof includes the petition for a

guardianship proceeding filed in the family court by MD Shahadat Hossain,

the order to show cause setting the hearing for the family court to determine

the appointment, and the affidavit of Petitioner- which the service failed to

acknowledge was dated the day after the hearing, is contemporaneous

evidence confirming MD Shahadat Hossain's guardianship appointment the

previous day.

73. Most notably, the SIJ order itself is dated a month and a half after the

hearing on December 8, 2016, was issued in "Proceeding for Appointment

of Guardian" for Petitioner and based specifically on the "motion papers and

supporting affidavits," which of course, necessarily includes the

guardianship petition for MD Shahadat Hossain and affidavit of Petitioner

confirming after the hearing on appointing guardianship that MD Shahadat

Hossain is his guardian.

74. Contrary to the AAO's reading, that the special SIJ findings were

made well after the guardianship appointment of MD Shahadat Hossain and

relied specifically on the papers from that proceeding clearly indicates that

Petitioner was not primarily seeking immigration benefits in filing for SIJ

but was seeking a guardian, from which he was then able to benefit from

SIJ: "When the Family Court … appoints a person other than a parent, the

Family Court necessarily evaluates the viability of parental reunification.*"*

*RFM v. Nielsen, 365 F. Supp. 3d 350, 380 & n.16 (SDNY 2019)* ("the agency

relies on the state court's expertise in these matters, and the agency is not to

reweigh the evidence on which the state court relied in issuing a Special

Findings Order…, the Family Court is an expert in making reunification

findings")  (citing *Matter of Marisol N.H*., 115 A.D.3d 185, 979 N.Y.S.2d

643, 646 (2014); *Matter of Karen C.,* 111 A.D.3d 622, 973 N.Y.S.2d 810,

811 (2013); *Matter of Trudy-Ann W.,* 901 N.Y.S.2d at 296. Id. at 709-10);

*see Perez-Olano v. Gonzalez*, 248 F.R.D. 248 265(C.D. Cal. 2008))

(:Congress appropriately reserved for state courts the power to make child

welfare decisions, an area of traditional state concern and expertise" as the

"SIJ statute affirms the institutional competence of state courts as the

appropriate forum for child welfare determinations regarding abuse, neglect,

or abandonment, and a child's best interests") (citing 6 USCIS-PM

J.3(D)(4));

75. Because the Service's interpretive rulings do not have the force and

effect of regulations,' and they may not be used to overturn the plain

language of a statute,'" the denial of Petitioner's SIJ petition cannot be

sustained on any ground provided by the agency and reopening or

reconsideration warranted as a matter of law. *Commissioner v. Schleier*, 515

US 323, 336 n.8 (1995) (*citing Davis v. United States,* 495 U. S. 472, 484

(1990); *Bartels v. Birmingham*, 332 U. S. 126, 132 (1947)); *see also, Egan v.*

*Weiss*, 119 F.3d 106, 107 (2d Cir. 1997) (denial of a classification petition

may be overturned if it is not in accordance with law). )); *see Matter of O-S-*

*G-* 24 I&N Dec. 56 (BIA 2006) (a "motion to reconsider a decision of the

Board of Immigration Appeals must include …an allegation of material

factual or legal errors in the prior decision that is supported by pertinent

authority"); *see also, Ke Zhen Zhao v. U.S. Dep't of Just.,* 265 F.3d 83, 83

(2d Cir. 2001) (reconsideration "asserts that at the time of the Board's

previous decision an error was made") (quotation marks omitted).

## COUNT THREE

## VIOLATION OF DUE PROCESS

76. The allegations set forth in paragraphs 1 through 75 above are
repeated and re-alleged as though fully set forth herein.

77. The agency's refusal to adjudicate the motion is a violation of
Plaintiff's right to due process.

78. Aliens are entitled to due process. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (an alien who has "passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness."). An alien must be afforded "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 533 (US 1985) (the "essential requirements of due process are notice and an opportunity to respond"); *Heckler v. Campbell,* 461 U.S. 458, 469 (US 1983) (noting where "notice and an opportunity to respond appears to be based on a principle of administrative law...a litigant must be given an adequate opportunity to respond").

79. The failure to adjudicate the motion does not "demonstrate [the AAO] followed its procedures" but that "it radically departed from them" as well as its statutory and regulatory obligations. *Ogbolumani v. Napolitano*, 557 F.3d 729, 735-36 (7th Cir. 2009) ("'egregious administrative irregularities may amount to constitutional violations'") (quoting *Sokolov v. Gonzales*, 442 F.3d 566, 569 (7th Cir. 2006)).

80. The agency has therefore deprived Plaintiff of his due process right to a decision in a meaningful time and manner.

81. Thus, as a matter of due process, the AAO must adjudicate the motion forthwith.

**WHEREFORE,** Plaintiff prays this Honorable Court and demands judgment against defendants as follows:

a.     Declare Plaintiff eligible for Special Immigrant Juvenile Status

b.     Declare the AAO's continued failure to adjudicate the Motion to Reopen and Reconsider without a providing a valid reason for delay to be in violation of statute, regulation and agency policy;

c.     Declare the AAO's continued failure to adjudicate the motion without a providing a valid reason in violation of Petitioner's right to due process;

d.     Compel the agency to grant an the motion or in the alternative issue a an immediate decision;

e.     Compel the agency to issue a an immediate decision or in the alternative set a reasonable by expedient deadline for a decision to be issued in conformity with regulation;

44

f.    Grant Plaintiff/Petitioner costs and attorney's fees associated

with this action; and

g.    Grant any and all other relief, including any equitable relief that

may be available, that this Court deems just and proper.

Dated:        New York, New
              York July 24, 2024

              Respectfully submitted,

              _____
              Thomas Goodman, Esq.
              Counsel for Plaintiff
              SOUTHERN DISTRICT BAR NO.:  Tg6251

45

## **ATTORNEY VERIFICATION**

I, Thomas Goodman, Esq, authorized representative of Plaintiff, affirm under penalty of perjury that:

The statement of facts contained in the Complaint are true to the best of my knowledge based on the record before USCIS and the AAO, except as to those matters that are stated in it on my information and belief, and as to those matters, I believe them to be true.

Dated:       New York, New
             York July 24, 2024
                      Respectfully submitted,


             _____
             Thomas Goodman, Esq.
             Counsel for Plaintiff
             SOUTHERN DISTRICT BAR NO.: Tg6251



             291 Broadway, Ste. 1800
             New York, NY 10007
             (212) 966-6789 (Tel)
             (212) 898-0461 (Fax)
             thomasgoodmanesq@hotmail.com

46

## <u>AFFIRMATION OF SERVICE</u>

I, Thomas Goodman, Esq., being an attorney duly admitted to the practice of law in the State of New York and in the courts of the United States does hereby affirm under penalties of perjury and pursuant to New York CPLR 2106 that the following is true:

On July 24, 2024, I served a true copy this Mandamus action through the Southern District Electronic Filing System to:

Susan DIBBONS
Chief Clerk
Administrative Appeals Office
5900 Capital Gateway Drive, MS 2090
Camp Springs, MD 20588-0009

Merrick GARLAND
Attorney General of the United States.
United States Department of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530

Ur JADDOU
Director, United States Citizenship and Immigration
Services. United States Citizenship and Immigration Services
20 Massachusetts Ave, NW
Washington, DC 20001

Tracy RENAUD
Associate Director, Service Center Operations
U.S. Citizenship and Immigration Services
20 Massachusetts Ave, NW
Washington, DC 20001

Alejandro MAYORKAS
Secretary, Department of Homeland Security
Department of Homeland Security
245 Murray Dr. SW Bldg
Washington D.C. 20528

Dated:

New York, New York
July 23, 2024

Respectfully submitted,

_____
Thomas Goodman, Esq.
Counsel for Plaintiff
SOUTHERN DISTRICT BAR NO.:Tg6251

291 Broadway, Ste. 1800
New York, NY 10007
(212) 966-6789 (Tel)
(212) 898-0461 (Fax)
thomasgoodmanesq@hotmail.com

48